# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

ROBERT BRISEÑO, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees,*

v.

M. TODD HENDERSON

*Objector-Appellant,*

v.

CONAGRA FOODS, INC.

*Defendant-Appellee.*

---

On Appeal from United States District Court for the
Central District of California, No. 2:11-cv-05379-CJC-AGR

## PLAINTIFFS-APPELLEES' BRIEF

ROBERT KLONOFF
10015 S.W. Terwilliger Blvd.
Portland, Oregon 97219
(503) 291-1570
klonoff@usa.net

SAMUEL ISSACHAROFF
40 Washington Square
South 411J
New York, New York 10012
(212) 998-6580
si13@nyu.edu

*Counsel of Record*

(SEE ADDITIONAL COUNSEL ON NEXT PAGE)

**TADLER LAW LLP**
Ariana J. Tadler
A.J. de Bartolomeo
Brian R. Morrison
One Pennsylvania Plaza
New York, New York 10119
(212) 946-9453
atadler@tadlerlaw.com
ajd@tadlerlaw.com
bmorrison@tadlerlaw.com

**DiCELLO LEVITT GUTZLER LLC**
Adam J. Levitt
Amy E. Keller
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com

**MILBERG PHILLIPS GROSSMAN LLP**
David Azar (CA Bar No. 218319)
16755 Von Karman Avenue, Suite 200
Irvine, California 92606
(212) 594-5300
dazar@milberg.com

## CORPORATE DISCLOSURE STATEMENT

Appellee is an individual person and is not required to file a Corporate Disclosure Statement. *See* FRAP 26.1.

# TABLE OF CONTENTS

## Contents

TABLE OF AUTHORITIES ................................................................................. i

STATEMENT OF JURISDICTION ..................................................................... vii

STATEMENT OF THE ISSUES .......................................................................... viii

INTRODUCTION ..................................................................................................1

STATEMENT OF THE CASE ..............................................................................5

    A.    The Claims at Issue ..............................................................................5

    B.    Pertinent Opinions and Orders ............................................................6

    C.    Settlement .............................................................................................8

    D.    District Court's Class Settlement and Attorneys' Fees Rulings ..............10

    E.    Recent Proceedings in This Court .........................................................13

SUMMARY OF THE ARGUMENT ....................................................................14

STANDARD OF REVIEW ...................................................................................17

ARGUMENT ........................................................................................................18

    I.   APPELLANT'S *PER SE* ARGUMENT THAT STATUTORY FEE-SHIFTING AWARDS MAY NOT EXCEED CLASS MEMBERS' CLAIMED RECOVERY IS CONTRARY TO CONTROLLING LAW ...............................18

        A.    Controlling Law Makes Clear that Under Consumer Fee-Shifting Statutes, Fees May Exceed Class Members' Recovery ...................................20

        B.    The Posture of this Case as a Settlement is Irrelevant under *City of Riverside* ...............................................................................23

        C.    State Consumer Protection Statutes Control Under *Erie* .........................27

    II.  THE DISTRICT COURT PROPERLY APPLIED THIS COURT'S CONTROLLING LAW ...........................................................................28

    III. APPELLANT'S AUTHORITIES BEAR NO RESEMBLANCE TO THIS CASE ...................................................................................................34

        A.    The Facts Matter ..................................................................................34

        B.    Appellant's Authorities are Easily Distinguishable ...............................37

IV. APPELLANT IMPROPERLY IGNORES THE CRITICAL FACT THAT THE FEE AWARD WAS BASED ON THE LODESTAR METHOD...............43

V. APPELLANT AND HIS AMICI'S ATTACK ON THE INJUNCTIVE REMEDY IS IRRELEVANT ..................................................................44

CONCLUSION ..................................................................................45

STATEMENT OF RELATED CASES ................................................47

CERTIFICATE OF COMPLIANCE....................................................48

CERTIFICATE OF SERVICE ............................................................49

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*,
    738 F.3d 960 (9th Cir. 2013) ................................................................14, 22, 28

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) .....................................................................35, 39

*Allen v. Woodfield Chevrolet, Inc.*,
    802 N.E.2d 752 (Ill. 2003) .................................... 22, 35, 37, 38, 39, 40

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ........................................................................37, 41

*Barrios v. California Interscholastic Fed'n*,
    277 F.3d 1128 (9th Cir. 2002) .........................................................................27

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .............................. 5, 15, 17, 29, 35, 36, 37, 40, 41

*Briseño v. ConAgra Foods, Inc.*,
    674 F. App'x 654 (9th Cir. 2017) ...............................................................7, 47

*Briseño v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .............................................................6, 7, 8, 47

*Briseño v. ConAgra Foods, Inc.*,
    Appeal No. 20-55068 ....................................................................................47

*Briseño v. Conagra Foods, Inc.*,
    No. 11-cv-05379 (C.D. Cal. July 23, 2019) ...............................................10, 33

*Briseño v. Conagra Foods, Inc.*,
    No. 2:11-cv-05379-CJC-AGR (C.D. Cal. Oct. 7, 2019) ...................................30

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) .......................................................17, 27, 36, 37

*Champion Produce, Inc. v. Ruby Robinson Co.*,
    342 F.3d 1016 (9th Cir. 2003) .........................................................................27

i

*City of Riverside v. Rivera*,
477 U.S. 561 (1986)........................................ 3, 4, 14, 20, 21, 23, 24, 25, 26, 27

*Close v. Sotheby's, Inc.*,
909 F.3d 1204 (9th Cir. 2018) ...............................................27

*Conagra Brands, Inc. v. Briseño*,
138 S. Ct. 313 (2017) .........................................................8

*In re Conagra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) ...........................................6

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) ....................................6, 7

*Cruz v. Alhambra Sch. Dist.*,
282 F. App'x 578 (9th Cir. 2008) ........................................25

*Cunningham v. Cty. of Los Angeles*,
879 F.2d 481 (9th Cir. 1988) .............................................25

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012) ...................................37, 38, 40

*In re Dry Max Pampers Litig.*,
724 F.3d 713 (6th Cir. 2013) ...................................... 37, 42

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
926 F.3d 539 (9th Cir. 2019) (*en banc*) ..............................44

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ................... 3, 14, 21, 23, 24, 25, 27, 31

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*,
250 F.3d 1234 (9th Cir. 2001) ..............................................4

*Farrar v. Hobby*,
506 U.S. 103 (O'Connor, J., concurring) ...............................21, 26

*In re Ferrero Litig.*,
583 F. App'x 665 (9th Cir. 2014) ......................................36, 37

ii

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ...................................................................21

*Gonzalez v. Germaine Law Office PLC*,
    No. CV-15-01427-PHX-ROS, 2016 U.S. Dist. LEXIS 137879 (D.
    Ariz. Oct. 3, 2016) ............................................................................26

*Grant v. Martinez*,
    973 F.2d 96 (2d Cir. 1992) ................................................................26

*Hayward v. Ventura Volvo*,
    108 Cal. App. 4th 509 (Cal. Ct. App. 2003)......................................22

*Helm v. Kingston*,
    No. 13-10-00224-CV, 2011 Tex. App. LEXIS 10024 (Tex. App. Dec.
    21, 2011) ............................................................................................23

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) .............................................37, 41, 42

*Jefferson v. Chase Home Fin.*,
    No. C 06-6510 TEH, 2009 U.S. Dist. LEXIS 64607 (N.D. Cal. July 10,
    2009) ..................................................................................................22

*Kumar v. Salov N. Am. Corp.*,
    No. 14-CV-2411-YGR, 2017 U.S. Dist. LEXIS 105463 (N.D. Cal.
    July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) .....................29

*Lopez v. Youngblood*,
    No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289 (E.D. Cal.
    Sep. 1, 2011) ......................................................................................32

*Luft v. Perry Cty. Lumber & Supply Co.*,
    2003-Ohio-2305 (Ohio Ct. App. 2003) ..............................................23

*Maher v. Gagne*,
    448 U.S. 122 (1980)............................................................................26

*McCown v. City of Fontana*,
    565 F.3d 1097 (9th Cir. 2009) ............................................................25

iii

*Millea v. Metro-North R.R.*,
    658 F.3d 154 (2d Cir. 2011) ...............................................................32

*Parkinson v. Hyundai Motor Am.*,
    796 F. Supp. 2d 1160 (C.D. Cal. 2010) ...........................................25

*Patel v. Trans Union, LLC*,
    No. 14-cv-00522-LB, 2018 U.S. Dist. LEXIS 40282 (N.D. Cal. Mar.
    11, 2018) ..............................................................................................32

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ......................................................37, 42

*Pearson v. NBTY, Inc.*,
    No. 11 CV 7972, 2014 U.S. Dist. LEXIS 357 (N.D. Ill. Jan. 3, 2014),
    *rev'd,* 772 F.3d 778 (7th Cir. 2014)....................................................42

*Quesada v. Thomason*,
    850 F.2d 537 (9th Cir. 1988) ......................................................25, 26

*Roes v. SFBSC Mgmt.*,
    944 F.3d 1035 (9th Cir. 2019) ................................ 14, 19, 29, 35, 37, 38, 39, 40

*Standard Guar. Ins. Co. v. Quanstrom*,
    555 So. 2d 828 (Fla. 1990) ...........................................................4, 22

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..............................................................28

*Tait v. BSH Home Appliances Corp.*,
    No. SACV 10-0711, 2015 U.S. Dist. LEXIS 98546 (C.D. Cal. July 27,
    2015) ....................................................................................................44

*United States v. Mageno*,
    762 F.3d 933 (9th Cir. 2014) ................................................................4

*Vargas v. Howell*,
    949 F.3d 1188 (9th Cir. 2020) (applying *Riverside* in the settlement
    context) ................................................................................................25

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................15

iv

*In re Wesson Oil Mktg. & Sales Practices Litig.*,
   818 F. Supp. 2d 1383 (J.P.M.L 2011) ...........................................................6, 37

*Williams v. H&R Block Enters.*,
   No. RG08366506, 2013 Cal. Super. LEXIS 3063 (Super. Ct. Alameda
   Cty. Nov. 8, 2013) ................................................................................................26

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) ..............................................................................32

*Zargarian v. BMW of N. Am.*,
   No. CV 18-4857, 2020 U.S. Dist. LEXIS 42826 (C.D. Cal. Mar. 3,
   2020) .................................................................................................................16, 43

**Statutes**

28 U.S.C. § 2072(b) ....................................................................................................28

42 U.S.C. § 1988 .........................................................................................................26

California Consumer Legal Remedies Act § 1780(e)..............................................22

Class Action Fairness Act (CAFA), 28 U.S.C. § 1712(e) ...........................22, 38, 41

Colorado Revised Statutes Title 6 ...........................................................................22

Comm. Code § 17.50(d)..............................................................................................22

Deceptive Trade Practices Act..................................................................................23

Fair Debt Collection Practices Act ..........................................................................21

Florida Deceptive and Unfair Trade Practices Act §521.2105...........................4, 22

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS
   505/10a(c) ......................................................................................................22, 23

New York Gen. Bus. Law § 349(h) ...........................................................................22

Oregon Rev. Stat. § 646.638(3) .................................................................................22

Rules Enabling Act ....................................................................................................28

**Other Authorities**

Ninth Circuit Rule 28-4 ...........................................................48

Federal Rule of Civil Procedure 3.3(a)(2) ...................................4

Federal Rule of Civil Procedure 11 .........................................47

Federal Rule of Civil Procedure 23 ...........................7, 8, 14, 19, 27, 28

Federal Rules of Appellate Procedure Rule 32....................48

Federal Rule of Civil Procedure 68 .........................................24

Howard Erichson, *The Problem of Settlement Class Actions,* 82 Geo. Wash. L. Rev. 951, 954 n.4 (2014) ..................................28

# STATEMENT OF JURISDICTION

Appellee agrees with the appellant's statement of jurisdiction.

## STATEMENT OF THE ISSUES

1.  Whether a class action settlement of state consumer law claims under statutory fee-shifting statutes is *per se* unfair and unreasonable if the attorneys' fees exceed the class's claimed recovery.

2.  Whether the district court properly found that the class settlement was fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e), where (a) the settlement provided substantial relief (greater than what was available at trial) to all members of the class who filed claims; (b) the settlement was reached only after more than eight years of contentious litigation, including two contested class certification proceedings and multiple layers of appeals; (c) plaintiffs' counsel faced substantial hurdles in proving their claims; and (d) the attorneys' fees awarded were only 50 percent of the undisputed lodestar.

## INTRODUCTION[1]

This appeal has the feel of two ships passing in the night. Appellant's counsel, a repeat challenger of class action settlements, seeks to voice "high-level concerns regarding an apparent trend toward class action settlements disproportionately benefitting attorneys," Order at 15, as aptly summarized by the court below. On Appellant's telling, this is yet another case where injunctive relief is overvalued so that class counsel can claim a percentage of an inflated corpus, all the while allowing a defendant to get off the hook by paying the class nothing of value. In such cases, as Appellant's counsel has argued endlessly, there is nothing but collusion in which class counsel get fees for no work, and defendants walk away with absolution.

While evocative, these arguments have nothing to do with the present case. The classes certified below were on behalf of consumers from eleven different states, nearly all of which included claims controlled by fee-shifting statutes that pay on a lodestar basis, not a percentage of a disputed corpus. The court below assigned no value to the injunction obtained and awarded fees based upon hours worked. Far

---

[1] Appellant's Brief is referred to as Appellant Br.; Appellant's Opposition to Appellees' Motion for Summary Affirmance is referred to as Summary Affirmance Opp.; Appellees' Reply in Support of Sanctions is referred to as Sanctions Reply; the district court's order approving the settlement and awarding attorneys' fees, *Briseño v. Conagra Foods, Inc.*, No. 2:11-cv-05379 (C.D. Cal. Oct. 8, 2019), ECF No. 695 (Final Approval Order), is referred to as Order.

1

from a collusive effort to improperly increase the fee award, this was a hard-fought, difficult piece of litigation that included two contested class certification proceedings, an interlocutory appellate challenge, and even a petition for *certiorari* to the Supreme Court challenging class certification. The final settlement after all this contested litigation provided fees equal to only half of the established lodestar at the time of the Order. Far from an attorney windfall, this is the customary operation of a fee-shifting statute that aims to incentivize lawyers to take cases that the market might not sustain.

Appellant's entire appeal rests on the claim that this is nothing but collusion, whereas the district court analyzed the case as a matter of a party prevailing and being entitled to lodestar-based fee shifting. Despite the clear holding of the district court that this was a difficult case that settled, and that the fees were based on a lodestar, Appellant never actually engages this issue.

Instead Appellant posits that, because the fee award exceeded the amounts ultimately claimed by class members, the settlement "unfairly afford[ed] preferential treatment to class counsel." Appellant Br. at 3; *id.* at 16 (summarizing Appellant's objection that fees were disproportionate to the class members' recovery). That is the whole basis of the appeal—often repeated—but ultimately the entirety of the claim.

This is simply not the law controlling this case. First, more than three decades ago, in the seminal case of *City of Riverside v. Rivera*, 477 U.S. 561 (1986) ("*City of Riverside*"), the Supreme Court rejected the exact argument that Appellant centrally urges here. It reasoned that "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts." *Id.* at 578. By now, this is a well-established proposition that allows for statutory fees even where actual damages are modest, or even non-existent, as in civil rights cases.

The same principle governs statutory fee-shifting for cases in which monetizing the harms might be difficult, even outside the civil rights context. In *Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015 (9th Cir. 2012) ("*Evon*"), this Court squarely held that *City of Riverside* applied to "consumer protection cases," noting that "where the monetary recovery is generally small, requiring direct proportionality for attorneys' fees would discourage vigorous enforcement of the consumer protection statutes." *Id.* at 1033. When a consumer is damaged but the dollar amounts are nominal (which is almost invariably the case in consumer cases), courts cannot possibly expect that attorneys' fees would be less than actual damages. No attorney would ever bring such a case, effectively immunizing the very misconduct that prompted the passage of the fee-shifting statues.

Second, the underlying claims include state consumer statutes that provide for statutory fee-shifting specifically defined by state law. State courts have applied *City of Riverside* to those statutes. *See, e.g., Standard Guar. Ins. Co. v. Quanstrom,* 555 So. 2d 828, 833 (Fla. 1990) (discussing the Florida Deceptive and Unfair Trade Practices Act). In turn, these state authorities are binding under *Erie. See, e.g., Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.,* 250 F.3d 1234, 1236 (9th Cir. 2001) ("Because this case is based on diversity jurisdiction, we are obligated to apply California state law regarding attorneys' fees.").

Controlling law thus eviscerates the entire premise of the appeal, *i.e.,* that in statutory fee-shifting cases under state consumer protection statutes, attorneys' fees under the lodestar method may not exceed amounts recovered by plaintiffs. Incredibly, ***Appellant fails even to mention any of those dispositive and binding authorities in his 53-page brief.*** And, having failed in his opening brief to address the legal authorities that govern *this* case (as opposed to a hypothetically collusive case), it is too late for Appellant to do so on reply.[2] Appellant is eager to continue a crusade that finds plaintiffs' lawyer misconduct anywhere that plaintiffs prevail. No

---

[2] *See* ABA Model Rule 3.3(a)(2) (requiring disclosure of adverse controlling authority); *United States v. Mageno,* 762 F.3d 933, 952 (9th Cir. 2014) ("[W]hen an appellant fails to argue, specifically and distinctly, an issue in his opening brief on appeal, we usually hold that the appellant has waived his right of appellate review of that issue").

doubt there will be other windmills to tilt at, but this appeal concerns fees governed by specific state laws, with statutory fee-shifting provisions, not Appellant's "high-level concerns."

Finally, Appellant's attempt to sweep this case within this Court's opinions in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ("*Bluetooth*"), and its progeny ignores the unifying principle of those cases: That a heightened review is necessary when the parties settle a class action *before* litigating class certification. As the district court recognized (Order at 15), those authorities do not apply here because the issue of class certification was twice litigated (once all the way to the Supreme Court) before the parties even commenced settlement negotiations. Here, too, Appellant is not litigating *this* case.

## STATEMENT OF THE CASE

### A.    The Claims at Issue

At issue are eleven statewide classes that were certified—over Conagra's vigorous opposition—to litigate state consumer protection claims, including state statutory claims with fee-shifting provisions.[3] Plaintiffs contend that, in bottles

---

[3] The eleven classes were defined as: "All persons who reside in the States of California, Colorado, Florida, Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, or Texas who have purchased Wesson Oils within the applicable statute of limitations periods established by the laws of their state of residence . . .

prominently labeled "100% Natural," Conagra sold Wesson cooking oils that

contain genetically modified organisms (GMOs). Those cooking oils were therefore

not "natural," let alone "100% Natural." *See Briseño v. ConAgra Foods, Inc.*, 844

F.3d 1121, 1123 (9th Cir. 2017). The Judicial Panel on Multidistrict Litigation

consolidated the cases for pretrial proceedings. *In re Wesson Oil Mktg. & Sales*

*Practices Litig.*, 818 F. Supp. 2d 1383 (J.P.M.L 2011).

Conagra left no stone unturned in litigating this case. As the district court

noted, Conagra litigated two motions to dismiss, and the parties conducted

"extensive discovery, including multiple discovery motions filed over the years."

Order at 6-7. Moreover, as discussed below, Conagra vigorously contested class

certification.

### B.      Pertinent Opinions and Orders

#### 1.      *District Court Rulings on Class Certification*

Plaintiffs filed two consecutive motions for class certification, both of which

were hotly disputed. After the district court denied the first motion without prejudice,

*In re Conagra Foods, Inc.*, 302 F.R.D. 537, 552 (C.D. Cal. 2014), it granted the

second motion in a lengthy opinion totaling 117 pages, *In re ConAgra Foods, Inc.*,

---

through the final disposition of this and any and all related actions." *Briseño v.*
*ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017).

90 F. Supp. 3d 919 (C.D. Cal. 2015). After rejecting Conagra's *Daubert* challenges to the crucial expert testimony, the court held that the named plaintiffs had standing and that all requirements for class certification under Federal Rule of Civil Procedure 23(a) and 23(b)(3) were satisfied. *Id.* at 942-82. In reaching its decision, the district court reviewed the claims under each of the eleven states' laws to determine which ones were "susceptible of classwide proof." *Id.* at 982-1021.

## 2. *Ninth Circuit Appeal and Order Denying* Certiorari

Conagra sought interlocutory review of the district court's class certification ruling under Federal Rules of Civil Procedure 23(f). Conagra challenged the district court's class certification findings with respect to heightened ascertainability (*i.e.,* administrative feasibility), typicality, predominance, and superiority. This Court granted review and unanimously affirmed in two opinions.

In the first opinion, the Court rejected Conagra's arguments regarding typicality, predominance, and superiority. *Briseño v. ConAgra Foods, Inc.*, 674 F. App'x 654, 657 (9th Cir. 2017). Among other things, the Court found no error in the district court's conclusion that "administering eleven statewide classes involving various state-law claims" was manageable. *Id.*

In a second opinion, the Court addressed Conagra's contention (rejected by the district court) that heightened ascertainability was a specific requirement under Rule 23. *Briseño*, 844 F.3d at 1124-25. Applying "traditional tools of statutory

construction," the Court reasoned that Rule 23(a) does not list "administrative feasibility" as a requirement. *Id.* at 1125-33.

Conagra sought *certiorari* regarding this Court's ascertainability decision. It argued that this Court's opinion had deepened an existing circuit conflict. In opposing certiorari, Appellees argued, *inter alia*, that the ascertainability issue was not squarely presented because of the specific disgorgement remedies under the controlling state statutes. Brief in Opp. to Petition for a *Writ of Certiorari* at 1, 14-18, No. 16-1221. The Supreme Court denied *certiorari*. *Conagra Brands, Inc. v. Briseño*, 138 S. Ct. 313 (2017).

## C. Settlement

After the Supreme Court denied *certiorari*, the parties commenced settlement negotiations, first privately and then with the assistance of Magistrate Judge McCormick, who was assigned by the district court. The parties reached an agreement in principle in November 2018. In March 2019, the parties reached a settlement with the following terms:

(a) $0.15 for each unit of Wesson Oils purchased to households submitting valid claim forms (to a maximum of thirty units without proof of purchase, and unlimited units with proof of purchase),

(b) an additional fund of $575,000 to be allocated to New York and Oregon class members submitting valid claim forms, as compensation for statutory damages under those states' consumer protection laws, and

(c) an additional fund of $10,000 to compensate those in all classes submitting valid proof of purchase receipts for more than thirty purchases, at $0.15 for each such purchase above thirty, with Class Counsel paying any non-funded claims (i.e., claims above the $10,000 provided by ConAgra) from any attorney fees awarded in this case.

Order at 3.

Under these terms, every class member (about 15 million in total, Summary Affirmance Opp. at 9) who submitted a claim was entitled—*without proof of purchase* but merely by submitting a claim—to $0.15 for each unit of Wesson Oil purchased, up to 30 units. Order at 2. Thus, under the settlement, *Conagra committed itself to pay up to approximately $67.5 million under the settlement without requiring any proof of purchase*. And it committed to pay an additional $575,000 to New York and Oregon class members and $10,000 for claims (with proof of purchase) for more than 30 units. The available funds, therefore, were more than $68 million. Ultimately, class members submitted claims totaling approximately $1 million, but when plaintiffs' counsel negotiated the settlement and fee agreement with Conagra, neither side knew how many claims would be filed.

The agreement in principle originally provided, as injunctive relief, that Conagra would no longer market the Wesson oil products as "100% Natural." *Id.* However, after Conagra sold the Wesson brand to another company in February 2019, the injunctive relief was modified to apply to Conagra in the event that it should reacquire the Wesson brand. *Id.* Notably, Conagra stopped using the "100%

9

Natural" label in July 2017, Order at n.1, only months after losing its class certification appeal in this Court.

With respect to attorneys' fees, the parties agreed that Conagra would fund—separately from the settlement proceeds to class members—attorneys' fees and costs of up to $6,875,000. Order at 13. With costs totaling about $1 million, net attorneys' fees requested (and not opposed by Conagra) were approximately $5.85 million. Joint Decl. of H. Kelston & A. Levitt in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, Service Awards at 7, *Briseño v. Conagra Foods, Inc.*, No. 11-cv-05379 (C.D. Cal. July 23, 2019), ECF No. 663.

### D. District Court's Class Settlement and Attorneys' Fees Rulings

The district court preliminarily approved the settlement on April 4, 2019. *See* Order at 3. Subsequently, a multi-faceted notice campaign was undertaken, with class members being given a set time to object or opt out. *See id.* at 10-11. Out of about 15 million class members, the sole objection to the settlement was filed by Appellant, a law professor at the University of Chicago, and only one class member opted out. *See id.* at 11.

Upon final review, the district court overruled Appellant's objection and approved the settlement and attorneys' fee request. Order at 1-16. In doing so, the court found that the settlement was fair, reasonable, and adequate. The court noted that, in its view, the "case had difficulties from the beginning," including problems

10

of proving the case on the merits. *Id.* at 6. It recounted the myriad hurdles that class counsel overcame to achieve the result here, *id.* at 7, and it discussed the extensive litigation that had occurred. *Id.* at 9-10. It pointed out that "[t]he reaction of the class [had] been overwhelmingly positive," given that there was only one objector and one opt-out. *Id.* at 11.

In reviewing the settlement terms, the court found "the per-unit award" to be "substantial." *Id.* at 8. It noted that, although plaintiffs' counsel had originally sought a full "price premium" for mislabeling, the prior district judge in the case had narrowed the relief available to the class to "only the portion of [the price premium] attributable to consumers' belief that '100% Natural' meant that the products were GMO-free." *Id.* According to the court, even plaintiffs' original theory at trial would have yielded a "relatively low award" per class member, and the court's narrowing of the relief that the class could pursue made the maximum award per class member at trial even lower. *Id.* The court found that "[t]he settlement amount offered provide[d] an immediate and tangible benefit to class members and eliminate[d] the risk that they could receive less than that amount, or nothing at all, if litigation continued"; that "Judge McCormick carefully oversaw th[e] settlement"; and that "the precise value of the settlement was reached by accepting a mediator's proposal." *Id.* The court recognized that the value of the injunctive relief was "vigorous[ly] dispute[d]," and found merely that it "add[ed] some value." *Id.*

11

Indeed, the court noted that "even if there were no injunctive relief, the Court would likely find that the amount offered in settlement was fair and reasonable, given the likely obstacles to Plaintiffs recovering . . . ." *Id.* at 9.

On the issue of attorneys' fees, the court stated that it was "rely[ing] on the lodestar method," and that class counsel were seeking $6.85 million in fees and costs, even though the actual lodestar was "nearly $11.5 million." *Id.* at 13. According to the court, it was "noteworthy" that "Defendant [was] willing to pay anything at all given the many liability and damages issues this case has had from the beginning . . . ." *Id.*

Turning to Appellant's objection, the court rejected the argument that "the disproportionate attorney fee award under the settlement render[ed] the entire settlement unfair." *Id.* at 15. The court "appreciate[d] Objector's high-level concerns regarding an apparent trend toward class action settlements disproportionately benefitting attorneys," but was "not persuaded" that *this* settlement was unfair. *Id.* The court said that this was "especially true given that the classes in this case were certified before the settlement was reached." *Id.* (extensively quoting *Bluetooth,* 654 F.3d at 946). And the court reiterated the legal and factual challenges that this case posed, noting "the long history of this case and the impressive results achieved given the weakness of Plaintiffs' case." *Id.* at 15-16. The court stated that it "'appreciate[d] [Appellant's] proportionality concerns, but the record in this case sufficiently

'dispel[s] the possibility that class counsel bargained away a benefit to the class in exchange for their own interests.'" *Id.* at 16 (quoting *Bluetooth,* 654 F.3d at 938).

### E.    Recent Proceedings in This Court

Appellant filed his opening brief on April 3, 2020. Thereafter, new lead appellate counsel for Appellees, who had previously served as appellate counsel in successfully opposing Conagra's *certiorari* petition, entered the case. Upon reviewing Appellant's opening brief, they determined that Appellant's appeal was wholly insubstantial and that it was based on a glaring omission of crucial law. Accordingly, on May 15, 2020, Appellees filed a Motion for Summary Affirmance. Appellant filed an Opposition (and Motion for Sanctions) on May 22, 2020. Appellees filed an agreed motion to extend the due date for Appellees' merits brief until July 6, 2020, which the Clerk granted as unopposed. Appellees also filed a motion to stay briefing pending a ruling on Appellees' Motion for Summary Affirmance. The Motion for Summary Affirmance and motion to stay briefing are still pending. As a result, although Plaintiff-Appellees still maintain that summary affirmance is appropriate, they are filing herewith their merits brief.

## SUMMARY OF THE ARGUMENT

### I.

Appellant asserts an inflexible rule that a class settlement must be invalidated "as a matter of law" if attorneys' fees exceed the claimed amount recovered by the class. *See, e.g.,* Appellant Br. at 30. Appellant ignores the fact that the ultimate remedy made available to the class exceeded $68 million; this settlement was not an allocation of a fixed fund. In any event, controlling law refutes Appellant's theory. Appellant's own Rule 23 cases endorse no such rule. *See Roes v. SFBSC Mgmt.,* 944 F.3d 1035, 1051 (9th Cir. 2019) (the fact that attorneys' fees exceed the class's recovery "is not per se problematic"). More fundamentally, in the context of this case—involving claims under state consumer fee-shifting statutes—Appellant's purported *per se* rule is refuted by three related legal doctrines.

The first is that under *City of Riverside* and its progeny, a statutory fee award that exceeds client recovery may properly advance the legislative aim in creating fee-shifting. Second, under *Evon* and related cases, the doctrine of *City of Riverside* applies not only to civil rights cases but to consumer protection litigation. Third, under *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.,* 738 F.3d 960 (9th Cir. 2013), and similar cases, federal courts sitting in diversity must honor the substantive attorneys' fees laws of the states under basic principles of *Erie.* Appellant does not address any of these points in his merits brief.

II.

Appellant claims that under *Bluetooth*'s heightened review standard, reversal is required. But *Bluetooth*—and, indeed, all of Appellant's *Bluetooth* case law—apply the heightened review standard only to settlements reached *prior* to class certification. In this case, class certification was hotly contested and was ultimately achieved. Thus, the crucial fact under *Bluetooth*—a pre-certification settlement—is missing here, as the district court emphasized. Order at 15. The district court thoroughly and persuasively analyzed this settlement under controlling law and the correct legal standard, and properly found no indicia of collusion or self-dealing.

III.

Appellant miscomprehends the law and policy underlying statutory fee awards. The aim of fee-shifting statutes is unlike common fund benefits. When a court awards a common benefit fee, the goal is to replicate what a private contractual agreement would have yielded, but for the transaction costs of contracting with a group so numerous. That is why the benchmark in this Circuit and others is a percentage of the fund (in the Ninth Circuit, 25 percent[4]) that parallels the market for private contingency representation. By contrast, statutory fees are awarded on a

---

[4] *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (applying 25% benchmark rate as "starting point" under percentage of fund approach).

lodestar basis independent of client recovery, and in broad swaths of law frequently exceed the dollar value of the plaintiffs' recovery—something that could not happen in a true percentage of the fund situation.

Unlike many of Appellant's authorities, this case does not involve a fee award based on a percentage-of-the-fund. Instead, the award was based on the lodestar method, with the court awarding 50 percent of the undisputed lodestar. Even if the district court had awarded the entire lodestar, "[t]he Ninth Circuit has plainly stated that the lodestar amount is 'presumptively the reasonable fee amount' . . . .'" *Zargarian v. BMW of N. Am.*, No. CV 18-4857, 2020 U.S. Dist. LEXIS 42826, at *24 (C.D. Cal. Mar. 3, 2020) (quoting *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F. 3d 1041, 1045 (9th Cir. 2000)). Certainly, an award of only *half* the lodestar is *a fortiori* presumptively reasonable and cannot conceivably render the settlement invalid.

IV.

Although the settlement provided for injunctive relief as well as monetary benefits, the district court gave the injunctive aspect of the settlement virtually no weight. It noted that "even if there were no injunctive relief," it "would likely find that the amount offered in settlement was fair and reasonable, given the likely obstacles to Plaintiffs recovering . . . ." Order at 9. Thus, Appellant's (and the State Attorneys General amici's) contention that the injunctive remedy is deficient is

irrelevant. The settlement is fair, reasonable, and adequate based solely on the monetary component.

## STANDARD OF REVIEW

"[A] district court's approval of a class action settlement [is reviewed] for clear abuse of discretion. Such review is 'extremely limited,'" and the district court's decision is proper if "the district judge applies the proper legal standard and his findings of fact are not clearly erroneous." *Bluetooth*, 654 F.3d at 940 (internal citation omitted). "Parties seeking to overturn the settlement approval must make a 'strong showing' that the district court clearly abused its discretion" and the Court "must refrain from 'substitut[ing] [its] notions of fairness for those of the district judge.'" *Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1121 (9th Cir. 2020) ("*Campbell*") (citations omitted).

Likewise, "a district court's award of fees and costs to class counsel, as well as its method of calculation" are reviewed for abuse of discretion. *Bluetooth*, 654 F.3d at 940. "Findings of fact underlying an award of fees are reviewed for clear error." *Bluetooth*, 654 F.3d at 940.

# ARGUMENT

## I. APPELLANT'S *PER SE* ARGUMENT THAT STATUTORY FEE-SHIFTING AWARDS MAY NOT EXCEED CLASS MEMBERS' CLAIMED RECOVERY IS CONTRARY TO CONTROLLING LAW

This nine-year-old case involves a challenge by one class member (out of a class of about 15 million consumers) to the settlement of eleven classes certified under various states' consumer protection laws. The claim is that Conagra falsely represented its Wesson brand cooking oil to be "100% Natural." The settlement, which includes cash payments to every class member who submitted a timely claim, was reached in 2019 after more than eight years of contentious litigation—including two motions to dismiss, multiple primary jurisdiction and preemption motions, substantial discovery, heated discovery motion practice, two contested class certification motions, defendant's prior unsuccessful appeal to this Court, and defendant's prior unsuccessful petition for a *writ of certiorari*. The attorneys' fees were awarded under the lodestar method, but the actual award was only half of class counsel's actual lodestar. The court explained its ruling in a detailed, well-reasoned opinion, which applied this Court's case law. Order at 1-16.

Appellant's overarching argument for challenging the settlement and the attorneys' fee award is that a class settlement is *per se* unfair if the fee award exceeds the amounts claimed by class members. *See, e.g.,* Appellant Br. at 30 ("The Settlement was unfair as *a matter of law* because class counsel's fee award consumes

87% of the total benefit.") (emphasis added); *id.* ("The settlement approval cannot stand *as a matter of law* because class counsel negotiated $6.85 million for themselves in a Settlement where the class receives less than $1 million.) (italics added; bold deleted).[5]

Appellant has cited no case applying Federal Rule of Civil Procedure 23 holding that a class settlement must be invalidated *as a matter of law* if fees exceed ultimate class recovery. Indeed, even when (unlike here) a settlement is reached *before* class certification is decided, the fact that attorneys' fees exceed the class' recovery "is not per se problematic." *Roes,* 944 F.3d at 1051. Thus, the *per se* rule that Appellant demands directly contravenes the Rule 23 case law that he cites. More fundamentally, in the context of this case—involving claims under state consumer fee-shifting statutes—Appellant's purported *per se* rule is refuted by decades of controlling law that Appellant fails even to mention in his opening brief.

---

[5] *See also* Appellant Br. at 3 ("If the negotiated fees are outsized in relation to the value of the actual class benefit, the settlement should be rejected as unfairly affording preferential treatment to class counsel."); *id.* (the settlement "unfairly afford[ed] preferential treatment to class counsel."); and *id.* at 16 (summarizing Appellant's objection that fees were disproportionate to the class members' recovery).

### A. Controlling Law Makes Clear that Under Consumer Fee-Shifting Statutes, Fees May Exceed Class Members' Recovery

Not often does a party make sweeping arguments on appeal that are squarely refuted by decades of clear precedent, beginning with a dispositive ruling by the Supreme Court. It is always possible to miss a case here or there. But controlling Supreme Court authority so thoroughly infuses the law in this area as to make Appellant's failure to address it all the more glaring.

More than three decades ago, in the seminal case *City of Riverside*, the Supreme Court rejected the exact argument that Appellant urges here. The Court approved attorneys' fees of $245,456.25 under a federal civil rights fee-shifting statute, even though the damages recovered were only $13,300. Like Appellant here, the petitioner in *City of Riverside* argued for a "rule of proportionality," and contended that a fee award that exceeded actual damages was improper. 477 U.S. at 578. The Supreme Court emphatically rejected that argument. It noted that "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts." *Id*. And it reasoned that "[i]n light of the difficult nature of the issues presented . . . and the low pecuniary value of many of the rights respondents sought to vindicate, it is highly unlikely that the prospect of a fee equal

to a fraction of the damages respondents might recover would have been sufficient to attract competent counsel." *Id.* at 579.

Although *City of Riverside* involved a civil rights fee-shifting statute, this Court has made clear that the case applies equally to fee-shifting *consumer* statutes:

> [I]n *City of Riverside*, the Supreme Court, in the context of civil rights statutes, expressly rejected the proposition that fee awards must be in proportion to the amount of damages recovered. . . . ***The same is true in consumer protection cases: where the monetary recovery is generally small, requiring direct proportionality for attorney's fees would discourage vigorous enforcement of the consumer protection statutes***.... [W]hile the award here was small, that is not necessarily controlling because "an award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved." *Farrar v. Hobby*, 506 U.S. 103, 121 (O'Connor, J., concurring).

*Evon*, 688 F.3d at 1033 (emphasis added); *id.* (even a "relatively small" or "nominal" recovery may be a "complete" recovery or success). In other words, this Court *rejected*, in the context of a fee-shifting consumer statute, exactly the argument that Appellant makes here. *See also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("in statutory fee shifting cases . . . the lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class").

The application of *City of Riverside* is even stronger here than in *Evon*. Whereas *Evon* involved a federal consumer statute, the Fair Debt Collection

Practices Act, this case involves a host of state consumer protection fee-shifting statutes,[6] thus raising issues of *Erie* and federalism. As this Court has held, "for [*Erie*] purposes, state law on attorney's fees is substantive, so state law applies in diversity cases. '. . . [S]tate law . . . giving a right [to attorney's fees], which reflects a substantial policy of the state, should be followed.'" *Alaska Rent-A-Car,* 738 F.3d at 973 (internal citations omitted). Numerous cases under those and similar statutes have made clear that attorneys' fees may (and often should) exceed damages to plaintiffs. *See, e.g., Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003) (noting in a consumer statutory fee-shifting case that "[t]o limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying [the statute]").[7]

---

[6] *E.g.*, California Consumer Legal Remedies Act § 1780(e); Colorado Revised Statutes Title 6. Consumer and Commercial Affairs § 6-1-1113; Florida Deceptive and Unfair Trade Practices Act §521.2105; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(c); New York Gen. Bus. Law § 349(h); Ohio Consumer Sales Practices § 1345.09; Oregon Rev. Stat. § 646.638(3); Tex. Bus. & Comm. Code § 17.50(d).

[7] *Accord, e.g., Jefferson v. Chase Home Fin.*, No. C 06-6510 TEH, 2009 U.S. Dist. LEXIS 64607, at *10 (N.D. Cal. July 10, 2009) ("[T]he California courts have approved attorneys' fees where there is a significant disparity between the Plaintiffs' recovery and the lodestar fee award.") (citing authority); *Standard Guar. Ins. Co. v. Quanstrom,* 555 So. 2d 828, 833-34 (Fla. 1990) (recognizing that under the Florida Deceptive and Unfair Trade Practices Act, if "consumers cannot recover in full their attorney fees, they will quickly determine it is too costly and too great a hassle to file suit, and individual enforcement of this act will fail"); *Allen v. Woodfield*

## B. The Posture of this Case as a Settlement is Irrelevant under *City of Riverside*

Appellant does not argue that *City of Riverside* and *Evon* are no longer controlling law or somehow distinguishable. Rather, neither case is cited. Appellant thus ignores the statutory basis for the lodestar fee awards altogether. Nowhere in Appellant's brief is there any discussion of the state-law statutory basis for the lodestar fee or of the obligation of federal courts sitting in diversity jurisdiction to honor that substantive state law.

Because Appellant did not engage the substance of the ruling below, Appellees sought summary affirmance, which prompted a new round of briefing. That motion remains pending before this Court. The record on this appeal is a bit more complicated than usual because some of the arguments are presented not in the

---

*Chevrolet, Inc.*, 802 N.E.2d 752, 763 (Ill. 2003) ("The ability to recover attorney fees . . . allows defrauded consumers, whose claims are frequently small, to obtain counsel and seek redress under [the Illinois Consumer Fraud and Deceptive Business Practices Act]"); *Luft v. Perry Cty. Lumber & Supply Co.*, 2003-Ohio-2305, ¶ 42 (Ohio Ct. App. 2003) (quoting *City of Riverside*; in rejecting a rule of proportionality under the Ohio Consumer Sales Practices Act, the court noted that "[a]n attorney may spend inordinately large amounts of time and energy pursuing a claim that reaps relatively small benefits for a prevailing party"); *Helm v. Kingston*, No. 13-10-00224-CV, 2011 Tex. App. LEXIS 10024, at *41 (Tex. App. Dec. 21, 2011) ("in a [Deceptive Trade Practices Act] case, the ratio between the actual damages awarded and the attorney's fees is not a factor that determines the reasonableness of the fees"; court rejected argument that attorney's fees were excessive because they exceeded damages).

Appellant's brief in chief, but in response to the Motion for Summary Affirmance and, in a further sideline distraction, in Appellant's motion for sanctions. In this parallel litigation, Appellant for the first time tried to distinguish *City of Riverside* and *Evon* and their progeny. In anticipation that Appellant will now try to rescue himself from not addressing controlling law, Appellees must address arguments that are not properly presented but will no doubt arise. This is an odd way to proceed on appeal, but addressing these issues now hopefully avoids having to file a sur-reply to issues raised for the first time in a reply brief.

In response to Appellees' Motion for Summary Affirmance, Appellant argued that cases following *City of Riverside* apply only to jury verdicts and Rule 68 offers of judgment, not to *settlements*. Summary Affirmance Opp. at 2. There is no authority proffered for this bizarre proposition, but, instead, only a generalization from the fact that *City of Riverside* involved a jury verdict and *Evon* involved an offer of judgment.

As an initial matter, Appellant's proposed rule makes no sense. The purposes of fee-shifting statutes are accomplished just as effectively (if not more so) through settlements as through trials. Under Appellant's view (Summary Affirmance Opp. at 6), had a *jury* awarded $1 million, it would have been entirely proper in a statutory fee-shifting case for the court to award $6.85 million in fees. But in a *settlement* resulting in payments to the class of $1 million, fees are limited to a fraction of the

$1 million. This would be true, under Appellant's view, even if the settlement occurred on the eve of trial. That approach is illogical, and it would severely discourage settlement.

Unsurprisingly, Appellant's proposed rule directly contravenes decades of statutory fee case law. Scores of cases hold that *City of Riverside* and *Evon* apply to settlements, as well as to trials and offers of judgment. *See, e.g.*, *Vargas v. Howell,* 949 F.3d 1188, 1196-97 (9th Cir. 2020) (applying *Riverside* in the settlement context); *McCown v. City of Fontana,* 565 F.3d 1097, 1105 (9th Cir. 2009) (reversing and remanding settlement fee award for determination in accordance with *Riverside*); *Quesada v. Thomason,* 850 F.2d 537, 539-40 (9th Cir. 1988) ("*Quesada*") (same); *Cunningham v. Cty. of Los Angeles,* 879 F.2d 481, 486 (9th Cir. 1988) (reversing district court's lodestar reduction and awarding fee more than double amount of settlement). These principles apply fully in the class action context. *See, e.g., Cruz v. Alhambra Sch. Dist.,* 282 F. App'x 578, 580 (9th Cir. 2008) (noting, in a settlement of a case brought under 42 U.S.C. § 1983, that "the lodestar figure is presumptively a reasonable fee award"); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1171-73 (C.D. Cal. 2010) (approving $3.7 million lodestar-based fee that exceeded the approximately $1.4 million paid to class members who submitted claims, applying the same California fee-shifting statutes as are at issue in this case) (citing *Mangold v. California Pub. Utils. Comm'n*, 67

F.3d 1470, 1478-79 (9th Cir. 1995), and *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009)).[8]

For instance, more than three decades ago in *Quesada*, this Court addressed attorneys' fees under 42 U.S.C. § 1988 in a case that had previously settled. Without even pausing to consider whether *City of Riverside* was limited to cases involving jury trials, the Court applied that landmark case, noting that "prevailing plaintiffs' lawyers [can] recover a reasonable hourly fee for all hours reasonably worked on a case . . . even if plaintiffs' monetary recovery falls substantially below the attorneys' fees.'" 850 F.2d at 541 (citations omitted).

Moreover, countless fee-shifting cases hold that a plaintiff can be a prevailing party in a settlement as well as after a trial. *See, e.g., Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("prevail[ing] through a settlement rather than through litigation does not weaken her claim to fees"); *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (prevailing

---

[8] *Accord, e.g.*, *Grant v. Martinez*, 973 F.2d 96, 102 (2d Cir. 1992) (citing *City of Riverside* in affirming fee that was eight times class settlement amount); *Gonzalez v. Germaine Law Office PLC*, No. CV-15-01427-PHX-ROS, 2016 U.S. Dist. LEXIS 137879, at *2 (D. Ariz. Oct. 3, 2016) (citing *City of Riverside* in approving fees that greatly exceeded class settlement fund); *Williams v. H&R Block Enters.*, No. RG08366506, 2013 Cal. Super. LEXIS 3063, *7 (Super. Ct. Alameda Cty. Nov. 8, 2013) (citing *City of Riverside* in approving fee in class settlement under a California fee-shifting statute).

party includes relief obtained "through a consent decree or settlement"); *Barrios v. California Interscholastic Fed'n,* 277 F.3d 1128, 1134 (9th Cir. 2002) (same).

Finally, Appellant's argument (Sanctions Reply at 2) that the application of *City of Riverside* is an open question in the Ninth Circuit is both ludicrous (the Supreme Court's opinion is binding) and entirely unsupported: the sole case cited by Appellant, *Campbell v. Facebook,* 951 F.3d 1106, 1125 (9th Cir. 2020), nowhere even cites *City of Riverside,* either at page 1125 or anywhere else in its opinion.

At bottom, Appellant's overarching argument on appeal—*i.e.,* that fees cannot exceed the class members' recovery—is squarely contrary to controlling law. Appellant cannot salvage that argument by inventing unfounded black letter rules.

## C. State Consumer Protection Statutes Control Under *Erie*

Having no valid basis for distinguishing *City of Riverside, Evon,* or the numerous cases applying them, Appellant argues that, because this is a federal class action involving a fairness challenge under Rule 23(e), the state consumer protection statutes involved here are irrelevant (Summary Affirmance Opp. at 6). He cites no case so holding, and his argument is contrary to numerous cases. *See, e.g., Close v. Sotheby's, Inc.,* 909 F.3d 1204, 1208 (9th Cir. 2018) ("Because this is a diversity case, state law governs both 'the right to fees' and 'the method of calculating the fees.'" (citation omitted)); *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003) (to the same effect). As this Court has held, "for [Erie]

purposes, state law on attorney's fees is substantive, so state law applies in diversity cases. '. . . [S]tate law . . . giving a right [to attorney's fees], which reflects a substantial policy of the state, should be followed.'" Alaska Rent-A-Car, 738 F.3d at 973 (internal citations omitted).

Appellant's approach—that a class action settlement in federal court under state fee-shifting statutes is *per se* unreasonable if attorneys' fees exceed class members' recovery—would essentially nullify the state consumer protection statutes in class action diversity cases, given that "most certified class actions result in settlement." Howard Erichson, *The Problem of Settlement Class Actions,* 82 Geo. Wash. L. Rev. 951, 954 n.4 (2014). Such an approach would be a flagrant violation of the Rules Enabling Act. *See* 28 U.S.C. § 2072(b) (federal rules of procedure "shall not abridge, enlarge or modify any substantive right").

## II. THE DISTRICT COURT PROPERLY APPLIED THIS COURT'S CONTROLLING LAW

In a detailed and thorough opinion applying the law of this Circuit, the district court found that the settlement and attorneys' fees were reasonable. It rigorously applied the criteria for evaluating a settlement, as set forth in Rule 23(e), Rule 23(h), and *Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003). *See* Order at 5-12.[9] The court

---

[9] Citing *Roes v. SFBSC Management,* 944 F.3d 1035, 1049 & n.12 (9th Cir. 2019), Appellant makes a throwaway argument at the end of his brief (Appellant Br. at 52-

emphasized that, unlike Appellant's authority, this case involved a *contested* class certification, not a settlement reached prior to class certification. Order at 1.[10] This distinction, the court found, was critical under *Bluetooth*. Order at 15. The court pointed out that "the reaction of the class has . . . been overwhelmingly positive," given that there was only one objector (Henderson) out of millions of class members. *Id.* at 11. Reviewing the terms of the settlement, the court found that "the per-unit award" for class members was "substantial," *id.* at 8, and that the case posed serious challenges for the class, *id.* at 15-16. The court noted that Appellant was offering "high-level" concerns that were not applicable in *this* case. Order at 15. Applying a

---

53) that the district court applied the wrong standard in approving the settlement. This argument is meritless; the problem in *Roes* was that the district court had said that the settlement was presumptively fair from the mere fact that it was negotiated at arm's length. 944 F.3d at 1049 & n.12. The district court here made no such misstatement of law. Instead, it engaged in the "searching inquiry" required by *Roes*. *Id.* at 1049. Moreover, the crucial fact in *Roes* was that "a heightened fairness inquiry [was required] prior to class certification," (*id.*), a situation inapplicable to this case, in which the settlement followed two contested class certification procedures.

[10] Appellant cannot claim, as his attorney unsuccessfully tried to do elsewhere, that the certification here was really uncontested rather than contested. *Cf. Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 U.S. Dist. LEXIS 105463, at *12-13 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) (Appellant's counsel, Ted Frank, recognized that *Bluetooth* requires a more stringent standard for pre-certification settlement; district court rejected counsel's attempt to argue that a post-certification settlement was actually a pre-certification settlement because the composition of the class changed).

lodestar method and awarding only half the lodestar, the court rejected Appellant's argument that a settlement was *per se* unfair if fees are disproportionate to the class' recovery. *Id.* at 15. In the court's view, the fees requested were reasonable, and the record "'dispel[s] the possibility that class counsel bargained away a benefit to the class in exchange for their own interests.'" *Id.* at 16 (quoting *Bluetooth,* 654 F.3d at 938).

As an initial matter, Appellant's attack on the district court's ruling is based on a fundamental misunderstanding of the settlement's terms. Appellant repeatedly mischaracterizes the settlement here as an "allocation" of a fixed fund between class counsel and class members. Opp. at 4, 6.[11] That may have been true in some of Appellant's authorities, but he egregiously mischaracterizes *this* settlement. Here, every class member (about 15 million in total, Summary Affirmance Opp. at 9) who submitted a claim was entitled—*without proof of purchase* but merely by submitting a claim—to $0.15 for each unit of Wesson Oil purchased, up to 30 units. Order at 2. Thus, under the settlement, *Conagra committed itself to pay up to approximately $67.5 million under the settlement without requiring any proof of purchase*. (It also agreed to pay up to an additional $585,000 for claims based upon certain state

---

[11] *See also* Transcript of Proceedings at 28, *Briseño v. Conagra Foods, Inc.*, No. 2:11-cv-05379-CJC-AGR (C.D. Cal. Oct. 7, 2019) (Conagra's counsel directly refuting Appellant's allocation argument).

statutes for which statutory damages may have been awarded at trial. *See* Order at

3.) Because the district court had severely limited the damages that the class could

recover at trial—allowing instead only a narrow premium price basis for recovery

(*see* Order at 8)—the amounts that class members could recover under the settlement

were almost certainly equal to or greater than what they could have recovered at

trial.[12] The fact that only a fraction of the class ultimately submitted claims—despite

the simple claims procedure—does not retroactively make this a limited fund

settlement. Indeed, the low claims rate is precisely why the fee-shifting cases hold

that lodestar fees exceeding actual recoveries are necessary to encourage counsel to

vigorously prosecute small claims cases. *See, e.g., Evon*, 688 F.3d at 1033-34

("[W]here the monetary recovery is generally small, requiring direct proportionality

---

[12] Appellant argues (Sanctions Reply at 5) that the claims rate after trial would have been higher because "direct notice" could have been used. This argument has no foundation in the record. But, even on its terms, Appellant cannot explain how the district court could have had the necessary information to provide individual notice to most of the 15 million class members. Appellant also ignores that Magistrate Judge McCormick reviewed competing proposals for notice and claims admiration, and that *he* ultimately selected the settlement administrator that provided notice. Mem. in Supp. of Unopposed Mot. for Order Directing Notice to Class, ECF No. 651 at 3. Equally flawed is Appellant's argument (Sanctions Reply at 5) that the claims process after trial would have been the same as the settlement claims process. Under the settlement, no proof of purchase is required to recover for up to 30 units of the Wesson oil per class member. It is inconceivable that, in a contested trial, Conagra would have agreed to allow class members to make *any* claims without concrete, specific proof of purchases within the class period.

for attorney's fees would discourage vigorous enforcement of the consumer protection statutes."); *Millea v. Metro-North R.R.*, 658 F.3d 154, 169 (2d Cir. 2011) ("The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.") (emphasis in original). Under controlling law, Appellant cannot simply ignore the vast amount of settlement funds made available to the class (more than $68 million) and focus solely on the amount actually claimed.[13] Moreover, there is no reason to believe that *more* class members in this case would have submitted a claim after a trial verdict, especially given that a trial verdict's claims process almost certainly would have required proof of purchase. *See supra* at 31 n.12.

---

[13] *See, e.g., Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("[T]he district court abused its discretion in basing the fee on the class members' claims . . . rather than on a percentage of the entire fund or the lodestar."); *Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2018 U.S. Dist. LEXIS 40282, at *15 (N.D. Cal. Mar. 11, 2018) ("Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed."); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289, at *32 (E.D. Cal. Sep. 1, 2011) ("Where there is a claims-made settlement, such as here, the percentage of the fund approach in the Ninth Circuit is based on the total money available to class members, plus costs (including class administrative costs) and fees. It is well established that, in claims made or class reversion cases where there is a maximum fund, and unclaimed funds revert to the defendant, it is appropriate to award class fund attorneys' fees based on the gross settlement fund.").

According to Appellant, the settlement "overwhelmingly favored class counsel at the expense of the class[.]" Appellant Br. at 22. But the settlement and fee award squarely refute that allegation. As the district court explained at length, *see* Order at 6-11, this case could not be further from the collusive scenario that Appellant's counsel frequently attacks. It involved *eight years* of contentious litigation prior to settlement, two contested class certification motions, major *Daubert* disputes, multiple dispositive motions, substantial discovery, an interlocutory appeal to this Court, and an attempt to seek U.S. Supreme Court review. And Conagra agreed to make what are indisputably substantial monetary payments (without proof of purchase) to all class members who submitted valid and timely submitted claims. *See* Joint Decl. of H. Kelston & A. Levitt in Support of Unopposed Motion for Order Directing Notice to the Class at 5, *Briseño v. Conagra Foods, Inc.*, No. 11-cv-05379 (C.D. Cal. Mar. 12, 2019), ECF No. 652 (argument by Appellees below that monetary payments under the settlement exceeded what class members could have received at trial). Conagra agreed to pay fees separately, but not to the full extent of class counsel's nearly $11.5 million lodestar; instead, it agreed to pay only half of class counsel's lodestar, $5.85 million (plus costs of about

$1 million).[14] As the district court found, class counsel did not "'bargain[ ] away a benefit to the class in exchange for their own interests.'" Order at 16 (quoting *Bluetooth,* 654 F.3d at 938). This is an express finding of fact that repudiates a keystone argument advanced by Appellant.

## III. APPELLANT'S AUTHORITIES BEAR NO RESEMBLANCE TO THIS CASE

### A. The Facts Matter

As discussed below, Appellant's cases all involve wildly different facts, such as settlements negotiated prior to class certification, coupon settlements, or *cy pres* settlements with little or no compensation to the class. Indeed, Appellant does not seriously contend that the facts here raise concerns comparable to those in the cases he cites. Instead, he implicitly acknowledges that his cases are distinguishable, and he resorts to the astounding argument: "[S]o what?" Summary Affirmance Opp. at 4. And in response to Appellees' argument that the settlement here was not collusive, his response is again: "[S]o what?" *Id.* In other words, in Appellant's view, the facts do not matter.

---

[14] Appellant does not dispute that $11.5 million is the correct value of the lodestar. He does not contest either the number of hours that class counsel devoted to the case or the hourly rates that they designated.

Under this Court's case law, however, facts are everything, including two rounds of contested class certification proceedings, eight years of litigation, and the extraordinary result achieved for the class. This litigation was not a fleeting case designed to enrich plaintiffs' attorneys, but, instead, it was a hard-fought litigation necessitated by aggressive defense tactics.[15] Indeed, the crux of this Circuit's law is that district courts must conduct a "searching," fact-based analysis. *Roes,* 944 F.3d at 1049. In *Bluetooth, Allen,* and *Roes,* for example, this Court did not reverse the settlements but simply remanded for a more thorough inquiry. *See, e.g., Bluetooth,* 654 F.3d at 950 ("we express no opinion on the ultimate fairness of what the parties have negotiated"); *Allen v. Bedolla*, 787 F.3d 1218, 1225 (9th Cir. 2015) (same); *Roes*, 944 F.3d at 1050, 1060 (providing option for district court to reapprove the new settlement with revised notice). The district court analyzed this settlement under controlling law, after substantial briefing and an in-person hearing where Appellant was able to present his arguments.

Apart from his legally unsupportable disproportionality argument, the only facts Appellant mentions to invalidate the settlement and fee award are that this case

---

[15] Under Appellant's view of this case, plaintiffs' attorneys apparently should have settled the claims for little or nothing earlier in the litigation to avoid incurring more hours and costs—a result that would embolden defendants to delay class actions and mount baseless attacks.

involves a "clear sailing" agreement (defendant agrees not to dispute fees up to a certain amount) and a "kicker" agreement (attorneys' fees requested but not awarded to class counsel do not go to the class). Summary Affirmance Opp at. 2.

To begin with, Appellant assumes that these indicia are relevant even in the context of a case in which class certification is litigated prior to settlement. But as this Court noted only months ago, "*Bluetooth* . . . left open a question no subsequent case has answered: whether district courts are required to look for [the] subtle warning signs [clear sailing and reversion of unawarded attorneys' fees] in cases . . . that are settled *after* formal class certification." *Campbell,* 951 F.3d at 1125-26 (emphasis in original).

There are strong arguments that "clear sailing" and "kicker" clauses are irrelevant in cases, such as the instant case, that are settled *after* class certification is litigated. By their very nature, a hotly-contested class certification process dispels the concerns about collusion and self-dealing that were the basis for *Bluetooth. See, e.g., In re Ferrero Litig.,* 583 F. App'x 665, 668 (9th Cir. 2014) (fact that "settlement was reached after class certification . . . ameliorate[s] the concerns regarding collusion expressed by the *Bluetooth* court"); *Campbell,* 951 F.3d at 1125 (to the same effect).

Putting aside the question of whether *Bluetooth* is even applicable in a case in which class certification is litigated prior to settlement, the existence of a clear

sailing provision or kicker clause by no means requires reversal. *See, e.g., Campbell*, 951 F.3d at 1127 (affirming approval of settlement containing clear-sailing provision); *In re Ferrero Litig.,* 583 F. App'x at 668-69 (affirming approval of settlement despite clear sailing and kicker provisions); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) (affirming approval of settlement with kicker clause, noting that such clauses "are not per se forbidden"). That conclusion is particularly justified when a contested class certification proceeding occurs prior to the settlement. *Indeed, Appellant cites no decision by this Court in which either a clear sailing agreement or kicker clause was a basis for reversing a settlement that was negotiated after class certification was litigated.*

### B. Appellant's Authorities are Easily Distinguishable

In all events, a review of Appellant's cases underscores why he argued "so what" (Summary Affirmance Opp. at 4) instead of pointing to a single case that is actually on all fours with this one.

Appellant relies heavily on several cases, including *Roes*; *Allen*; *Dennis v. Kellogg Co.,* 697 F.3d 858 (9th Cir. 2012); *Bluetooth*; *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163 (3d Cir. 2013); *In re HP Inkjet Printer Litig.,* 716 F.3d 1173 (9th Cir. 2013); *In re Dry Max Pampers Litig.,* 724 F.3d 713 (6th Cir. 2013); and *Pearson v. NBTY, Inc.,* 772 F.3d 778 (7th Cir. 2014). He singles out three of those

cases—*Roes, Allen,* and *Dennis*—as cases that supposedly "require reversal" (Sanctions Reply at 1). Appellant's authorities, however, only confirm the district court's observation that Appellant is not focusing on the facts of *this* case. Order at 15. Indeed, Appellant's contention that *Roes, Allen,* and *Dennis* "require reversal" is beyond the bounds of even the most zealous advocacy.

### 1. *Roes*

*Roes* is easily distinguishable on precisely the rationale identified by the district court (Order at 15): *Roes* involved a settlement that was negotiated prior to certification, whereas this case involved two hotly contested class certification proceedings prior to settlement.[16] As the Court noted, "settlements negotiated prior to class certification are subject to a heightened risk that self-interest, even if not purposeful collusion, will seep its way into the settlement process." 944 F.3 at 1060. The instant case is the polar opposite, involving *two* contested class certification proceedings. And even in *Roes,* the Court left open the possibility that, on remand,

---

[16] Also, the objectors in *Roes* argued strenuously that the payments constituted "coupon" settlements. 944 F.3d at 1052-54. Although the Court did not decide whether the awards qualified as coupons under the Class Action Fairness Act, it noted that the district court failed to scrutinize the true value of the class' recovery. *Id.* at 1053. Here, there is no conceivable argument that the awards to class members are coupons or are otherwise lacking in full value. Appellant is simply wrong in arguing (Sanctions Reply at 1) that *Roes* did not raise concerns about the possible coupon nature of the relief.

the district court could "re-approv[e] . . . the current settlement, with a new notice plan." *Id.*[17]

## 2. *Allen*

*Allen* is readily distinguishable on the same grounds. Like *Roes,* the settlement was "negotiated in the absence of a certified class." 787 F.3d at 1220. And the Court, as in *Roes,* emphasized that the "procedural burden is more strict when a settlement is negotiated absent class certification." *Id.* at 1224. Moreover, as in *Roes,* the Court "express[ed] no opinion on the ultimate fairness of what the parties . . . negotiated[.]" *Id.* at 1225 (citation and internal quotation marks omitted). *See also id.* at 1224 ("We take no position on the substantive fairness of the agreement."). *Allen* emphasized that the district court, in approving a settlement, "must give a reasoned response to all non-frivolous objections," *id.* at 1223-24 (citation and internal quotation marks omitted), which is exactly what the district court has already done here.

---

[17] Appellant's assertion that "[t]he problem in *Roes* was the disproportionality" (Sanctions Reply at 1 n.1) is flawed; the overarching concern in *Roes* that led to the Court's heightened scrutiny was the fact that the settlement was reached before class certification was litigated. 944 F.3d at 1060.

### 3.    *Dennis*

Likewise, the settlement in *Dennis* was "negotiated prior to class certification[.]" 697 F.3d at 861. Moreover, the case raised significant concerns—discussed by the Court at length—because it "include[d] *cy pres* distributions of money and food to unidentified charities." *Id.* There is no *cy pres* component in the instant case. It is absurd for Appellant to argue (Sanctions Reply at 1) that *Dennis,* a wholly inapposite case, "require[s] reversal[.]" Sanctions Reply at 1.

### 4.    *Bluetooth*

Appellant concedes that *Bluetooth* and the other cases discussed below are even weaker authority, since he does not argue that these authorities "require reversal."

The district court squarely addressed *Bluetooth,* citing it multiple times. Order at 15, 16. As the court persuasively noted, *Bluetooth* (like *Roes, Allen,* and *Dennis,* and *unlike* the instant case) involved a settlement that was negotiated prior to class certification. *Bluetooth* makes clear that the potential for collusion is greater in the settlement class context. *See* Order at 15 (detailed quotation from *Bluetooth*). Moreover, the court addressed at length *Bluetooth*'s consideration that a fee award should not be "'unreasonably excessive in light of the results achieved.'" Order at 15 (quoting *Bluetooth*). It relied specifically on the impressive cash award to class members who filed claims, an analysis that Appellant cannot credibly dispute. *Id*. In

short, as the district court persuasively demonstrated, *Bluetooth* does not undercut in the slightest the settlement or fee award in this case.

### 5. *Baby Products*

Also inapposite is the Third Circuit's *Baby Products* case. That case involved a percentage of the fund fee award, and the issue was whether a *cy pres* remedy should be treated as a benefit to the class. In other words, *Baby Products* has nothing to do with a lodestar fee award under a state statutory fee-shifting statute. Ironically, however, Appellant ignores the one part of *Baby Products* that *is* relevant: the court's admonitions that it did not "want to discourage counsel from filing class actions in cases where few claims are likely to be made but the deterrent effect of the class action is equally valuable." 708 F.3d at 178.

### 6. *HP Inkjet*

Also irrelevant is *HP Inkjet.* That case also involved a settlement that occurred before class certification. 716 F.3d at 1176 (noting that certified a class at the same time that it approved the settlement). Moreover, the case involved the calculation of fees in coupon settlements under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1712(e). *Id.* at 1180. The instant case is not a coupon settlement, and thus the Court's statutory interpretation of CAFA's coupon settlement provisions is irrelevant. Importantly, although the majority and the dissent disagreed on the

application of CAFA, all three judges agreed that the lodestar method was proper for the non-coupon portion of the settlement. *Id.* at 1185, 1195-97.

### 7.    *Dry Max Pampers*

In *Dry Max Pampers,* unnamed class members "[did] not receive *any* award." 724 F.3d at 716 (emphasis added). Moreover, in complete contrast with the instant case, the *Dry Max Pampers* case settled before plaintiffs had responded to defendant's motion to dismiss, "before any formal discovery in the case," and before class certification had been adjudicated. *Id.* That case is a far cry from the instant, hard-fought litigation.

### 8.    *Pearson*

In *Pearson,* like Appellant's other inapposite authority, the settlement was reached *before* the district court granted plaintiffs' unopposed motion for class certification. *Pearson v. NBTY, Inc.*, No. 11 CV 7972, 2014 U.S. Dist. LEXIS 357, at *8-11 (N.D. Ill. Jan. 3, 2014), *rev'd,* 772 F.3d 778 (7th Cir. 2014). Indeed, the court noted that if class certification had been contested, certification might have been "refused." *Id.* at *8.

Thus, as *Pearson* shows, even reaching outside this Circuit, Appellant's best cases involved settlements achieved prior to class certification (and with much less contentious litigation as compared to the instant case, which involved lengthy district court litigation and multiple appeals).

42

**IV. APPELLANT IMPROPERLY IGNORES THE CRITICAL FACT THAT THE FEE AWARD WAS BASED ON THE LODESTAR METHOD**

Unlike many of Appellant's authorities, this case does not involve a fee award based on a percentage-of-the-fund. Instead, the award was based on the lodestar method, with fees being paid separately from the amounts awarded to class members. Importantly, Appellant does not dispute that the lodestar amount submitted by class counsel is *twice* what the district court actually awarded in fees. In particular, Appellant does not dispute either the number of hours that class counsel devoted to the case or the billing rates for each professional that class counsel used in calculating the lodestar.

Even if the district court had awarded the entire lodestar, that award would have been presumptively reasonable. "The Ninth Circuit has plainly stated that the lodestar amount is 'presumptively the reasonable fee amount,' and that a modification of the lodestar is appropriate only in 'rare' and 'exceptional' cases supported by both 'specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high.'" *Zargarian*, 2020 U.S. Dist. LEXIS 42826, at *24 (quoting *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F. 3d 1041, 1045 (9th Cir. 2000)). Thus, the Ninth Circuit does "not require courts employing the lodestar method to perform a 'crosscheck' using the percentage method . . . because 'the lodestar method yields a fee that is presumptively

[reasonable].'" *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 571 (9th Cir. 2019) (*en banc*) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, (2010)). The lodestar method is particularly appropriate in cases, such as this one, involving fee-shifting statutes. *See, e.g., Tait v. BSH Home Appliances Corp.*, No. SACV 10-0711, 2015 U.S. Dist. LEXIS 98546, at *34 (C.D. Cal. July 27, 2015) (employing lodestar method where consumer protection claims provided for fee-shifting, and fees would not reduce class recovery since there was no common fund).

This authority is especially powerful here. If the full lodestar would have been presumptively reasonable, it is simply not credible for Appellant to argue that an award of *half* the lodestar is unreasonable and renders the settlement unfair, especially in a case involving statutory fee-shifting statutes.

## V.   APPELLANT AND HIS AMICI'S ATTACK ON THE INJUNCTIVE REMEDY IS IRRELEVANT

Appellant and his *amici* (certain State Attorneys General) create a straw man by arguing that the injunctive aspect of this case was a major driver (if not *the* major driver) of the district court's approval of the settlement. Indeed, the *amicus* brief focuses solely on the injunctive aspect of the case, ignoring altogether the monetary settlement. But these briefs completely distort the district court's ruling. Far from attaching major weight to the injunctive portion of the settlement, the court noted

that the value of the relief was "vigorously dispute[d]," and it found only that the injunctive component had "at least some value," without quantifying that value. Order at 9. More importantly, the court said that "even if there were no injunctive relief," it "would likely find that the amount offered in settlement was fair and reasonable, given the likely obstacles to Plaintiffs recovering . . . ." *Id*. The decisive factor in the court's approval of the settlement and the fee award was the monetary component. And, neither Appellant nor *amici* can credibly claim that the monetary component for class members filing claims is deficient. As the district court found, the per-unit monetary award under the settlement is "substantial." Order at 8. In short, this settlement would have been fair, reasonable, and adequate without any injunctive remedy.

## CONCLUSION

The district court's order should be affirmed.

Dated: July 6, 2020                     Respectfully submitted,


                                        /s/_____
                                        **SAMUEL ISSACHAROFF**
                                        40 Washington Square South
                                        411J
                                        New York, New York 10012
                                        (212) 998-6580
                                        si13@nyu.edu

                                        *Counsel of Record*

**ROBERT KLONOFF**
10015 S.W. Terwilliger Blvd.
Portland, Oregon  97219
(503) 291-1570
klonoff@usa.net

**TADLER LAW LLP**
Ariana J. Tadler
A.J. de Bartolomeo
Brian R. Morrison
One Pennsylvania Plaza
New York, New York  10119
(212) 946-9453
atadler@tadlerlaw.com
ajd@tadlerlaw.com
bmorrison@tadlerlaw.com

**DiCELLO LEVITT GUTZLER LLC**
Adam J. Levitt
Amy E. Keller
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com

**MILBERG PHILLIPS GROSSMAN LLP**
David Azar (CA Bar No. 218319)
16755 Von Karman Avenue, Suite 200
Irvine, California  92606
212-594-5300
dazar@milberg.com

# STATEMENT OF RELATED CASES

*Briseño v. ConAgra Foods, Inc*., **844 F.3d 1121 (9th Cir. 2017) and** *Briseño v. ConAgra Foods, Inc.*, **674 F. App'x 654 (9th Cir. Jan. 3, 2017):** This Court affirmed the district court's certification of the classes in this matter.

*Briseño v. ConAgra Foods, Inc.*, **Appeal No. 20-55068**: In addition to the instant appeal, Henderson appealed the district court's order denying his motion for sanctions under Federal Rule of Civil Procedure 11. Henderson filed a motion to voluntarily dismiss that appeal on April 27, 2020. ECF No. 6.

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 28-4, counsel for Plaintiff-Appellee hereby certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) because this brief contains 10,882, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). Counsel's approximation is based on the "Word Count" function of Microsoft Word. Counsel for Plaintiff-Appellee further certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 14-point Times New Roman font in Microsoft Word.

**Dated:** July 2, 2020

/s/_____

Adam J. Levitt
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
alevitt@dicellolevitt.com

## CERTIFICATE OF SERVICE

I, Adam J. Levitt, hereby certify that on July 2, 2020, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using CM/ECF. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

**Dated:** July 2, 2020

/s/_____
Adam J. Levitt
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
alevitt@dicellolevitt.com